UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
══════════════════════════════════════════════════

RCP's LEAR, LLC,

                        Plaintiff,

v.                                        5:07- CV - 96 (NPM/GJD)


TAUGHANNOCK AVIATION
CORP. and JET FIRST, INC.,
CHRIS DOSCHER, STUART
CAUFF, and MICHAEL KEISTER,

                        Defendants.



══════════════════════════════════════════════════

APPEARANCES                          OF COUNSEL


GANZ, WOLKENBREIT & FRIEDMAN, LLP   ROBERT E. GANZ, ESQ.
Attorney for plaintiff
1 Columbia Circle
Albany, NY 12203


HARRIS BEACH PLLC                   EDWARD C. HOOKS, ESQ.
Attorney for defendant and cross-claimant
Taughannock Aviation Corp.
119 East Seneca Street
Ithaca, NY 14851-0580

NEAL P. McCURN, Senior District Court Judge

## MEMORANDUM-DECISION AND ORDER

**I.    Introduction**

Plaintiff RCP's Lear, LLC ("RCP") brings this action alleging the

defendants' breach of various agreements relating to aircraft chartering

arrangements.  The court has diversity jurisdiction over this matter pursuant to 28

U.S.C. § 1332(a)(1).

Currently before the court are RCP's Motions for Default Judgment

("motions") against defendants Jet First, Inc. ("Jet First") and Chris Doscher

(Doscher") (Doc. No. 18), and against defendant Stuart Cauff ("Cauff") (Doc. No.

24), pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Rule

55.2 of the Local Rules for the Northern District of New York.  For the reasons set

forth below, RCP's motions will be granted.

**II.    Background**

The following facts are taken from RCP's complaint and are assumed true

for the purpose of the motions before the court.  In July of 2005, RCP, a New

Jersey limited liability company with its principal place of business in Skillman,

New Jersey, became owner of a Challenger 600 aircraft ("the aircraft").  RCP

wished to generate revenue and profits as a result of ownership of the aircraft and

sought to make arrangements with an entity which held a Federal Aviation Agency ("FAA") Operating Certificate for charter operation in order to utilize the aircraft in that manner.  RCP approached defendant Cauff, with whom he had previously made similar arrangements with respect to a different aircraft, to further RCP's goal to enter into a charter arrangement.  Cauff was associated with defendant Jet First, which, according to Cauff, was soon to be merged with Taughannock Aviation Corp. ("TAC"),  a New York corporation with its principal place of business in Ithaca, New York.   On July 12, 2005, RCP entered into an Aviation Services Agreement ("the Agreement") with TAC (which held a valid FAA operating certificate)  for the purpose of generating income for RCP, TAC, and Jet First.

Pursuant to the Agreement, TAC would have possession of and operate the aircraft for a ten year period, bearing all expenses of the charter flight operations, including but not limited to maintenance costs for the aircraft.  TAC agreed to pay RCP the sum of $54,275.61 per month as a lease rate.  The base of operations for the charter flights would be Ithaca, New York.  The parties agreed that in the event of disputes arising in connection with the agreement, "[t]his Agreement shall be governed by and construed in accordance with the laws of the State [of] New York.  Any legal action arising in connection with this Agreement shall be brought

3

in an appropriate court with jurisdiction over matters arising in and for Tompkins County, NY."  (Doc. No. 1, Exh. 1, p. 11).

TAC entered into a maintenance service plan agreement with Honeywell International, Inc. ("Honeywell") to provide engine maintenance for the aircraft. As owner, RCP was required to guarantee the obligations of TAC to Honeywell. The guarantee did not obviate TAC's obligation under the Agreement to bear the ultimate expense of providing all maintenance services relating to the aircraft during the term of the Agreement.

The parties performed their respective obligations under the Agreement from July through December, 2005.  Beginning in January, 2006, RCP alleges that TAC failed to pay the obligations due Honeywell under the maintenance service plan, and beginning in April, 2006, ceased making monthly lease payments to RCP pursuant to the Agreement.  In order to ensure the continued proper servicing of the aircraft, RCP paid Honeywell the sum of $216,630.87 for TAC's defaulted obligations for January through April and August through November of 2006. The amount of the defaulted lease payments through January of 2007, when the action was filed in this court, is $542,760.10.

At the approximate time that RCP and TAC entered into the Agreement, TAC entered into an Aircraft Charter Operating Agreement ("Charter Agreement")

4

with defendant Jet First and its principal shareholders Cauff, Doscher, and Michael Keister. The Charter Agreement provided that Jet First would arrange for charter flights and retain certain revenues. In addition to monies which were to flow between Jet First and TAC, the Charter Agreement provided that Jet First would make the lease payments of $54,275.61 directly to RCP, and further provided that the cost of maintenance was to be the responsibility of Jet First, including the maintenance service plan charges from Honeywell.

In April, 2006 TAC surrendered possession of the aircraft to Jet First, because TAC had not been paid by Jet First for various expenses TAC had incurred in connection with the operation of the aircraft. TAC received an acknowledgment letter from Jet First, which recognized Jet First's financial responsibility for payment of the accrued maintenance services, totaling $139,996.00.[1] RCP was also obligated to pay $ 13,993.32 to another provider of aircraft maintenance/fuel services who filed a lien against the aircraft for unpaid services and/or products. This sum was paid by RCP to keep the aircraft title free and to avoid being in default with RCP's own financing lender. On November 24, 2006, the aircraft was recovered by RCP from Jet First and provided to a new

---

[1]        This sum is included in the $216,630.87 set forth, <u>supra</u>, that RCP paid Honeywell for TAC's defaulted obligations.

operator.  RCP filed this action seeking a total reimbursement by defendants of $708,249.56 plus reasonable attorneys fees.

On May 10, 2007, RCP sought an entry of default from this court as against Jet First and Doscher (Doc. No. 16).  RCP filed an affidavit asserting that pursuant to § 311 (a)(1) of the New York Civil Procedure Law and Rules ("CPLR"), Jet First was properly served a copy of the summons and complaint in the present action on February 13, 2007.  Pursuant to CPLR § 308, Doscher was also properly served a copy of the summons and complaint in the present action on February 13, 2007.  The time for Jet First and/or Doscher to appear, or answer the complaint, expired on or about March 5, 2007, pursuant to Rule 12 of the Federal Rules of Civil Procedure.  On May 17, 2007, entry of default was granted by the Clerk of the Court against Jet First and Doscher.

On June 6, 2007, RCP sought an entry of default from this court as against Cauff (Doc. No. 22).  RCP filed an affidavit asserting that pursuant to CPLR § 308(2), Cauff was properly served a copy of the summons and complaint in the present action on April 4, 2007.  The time for Cauff to appear, or answer the complaint, expired on or about May 30, 2007, pursuant to Rule 12 of the Federal Rules of Civil Procedure.  On June 8, 2007, entry of default was granted by the Clerk of the Court against Stuart Cauff.  RCP now comes before the court seeking

6

$708,249.56 plus interest from the date of the alleged breach of the Agreement to the date of entry of default against Jet First, Doscher and Cauff by this court.

## III.   Discussion

### A. Standard for Default Judgment

Fed. R. Civ. P. Rule 55(a) states in pertinent part that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a) (West 2007).  "The procedural steps contemplated by the Federal Rules ... following a defendant's failure to plead or defend ... begin with the entry of a default upon a plaintiff's request." Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981).  "Then, pursuant to Rule 55(c), the defendant has an opportunity to seek to have the default set aside.  If that motion is not made ..., and no hearing is needed to ascertain damages, judgment by default may be entered by the court, or, if defendant has not appeared, by the clerk. " Id.

To relieve a party from default, the district court must consider all of the following factors: "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 243 (2d Cir. 1994).

7

"The disposition of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95 (2d Cir. 1993).

Judgment by default is one of the most severe sanctions which the court may apply, and "its use must be tempered by the careful exercise of judicial discretion to assure that its imposition is merited.  However, where one party has acted in willful and deliberate disregard of reasonable and necessary court orders and the efficient administration of justice, the application of even so stringent a sanction is fully justified and should not be disturbed." <u>Trans World Airlines, Inc. v. Hughes</u>, 332 F.2d 602, 614 (2d Cir. 1964).

"[C]oncerns regarding the protection of a litigant's rights are heightened when the party held in default appears <u>pro se</u>.  A party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation, and trial judges must make some effort to protect a party so appearing from waiving a right to be heard because of his or her lack of legal knowledge." <u>Enron Oil Corp.</u>, 10 F.3d at 96. "Hence, as a general rule a district court should grant a default judgment sparingly and grant leave to set aside the entry of default freely when the

defaulting party is appearing  pro se." It is important that the district court explain

its reasoning in granting a default judgment or denying a motion to vacate under

these circumstances. "The absence of an explanation defeats intelligent appellate

review." Id.

### B.    Application of the Law to the Facts of this Case

As a threshold matter, the Court notes that neither Jet First, Doscher, nor

Cauff have filed a pro se appearance in this case, nor has counsel for any of the

aforementioned defendants filed an appearance. Keeping in mind the heightened

consideration afforded a pro se litigant, the Court is mindful of its obligation to

grant a default judgment sparingly in a situation where, as here, the defaulting

parties are not represented by counsel.

The court finds that Jet First, Doscher, and Cauff have had sufficient notice

of the present litigation. In addition to personal service of the complaint on these

three parties at the inception of this litigation, the court presumes that every

relevant document which has been filed with the court has been sent via first-class

mail to said parties. The court also finds that the parties could have filed a pro se

appearance in this action, and in doing so, the parties could have subsequently

moved to set aside the entry of default for good cause, pursuant to Fed. R. Civ. P.

9

Rule 55(c).  Accordingly, the court finds that Jet First, Doscher and Cauff have willfully and deliberately failed to plead or defend their interests in this case. Setting the defaults aside is not at issue in the case at bar because it has not been requested by the defaulting parties, nor has any meritorious defense been presented.  Accordingly, default judgment will enter against Jet First, Doscher and Cauff.

## IV.    Conclusion

For the reasons set forth above, the Court hereby GRANTS RCP's Motions for Default Judgment against Jet First, Inc. and Chris Doscher (Doc. No. 18) and against Stuart Cauff (Doc. No. 24).  The respective Orders of Judgment will be signed by the court and entered on this date.

SO ORDERED.

July 17, 2007

_____
Neal P. McCurn
Senior  U.S. District Judge