UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

RCP's LEAR, LLC,

                  Plaintiff,

v.                                 5:07- CV - 96 (NPM/GJD)

TAUGHANNOCK AVIATION
CORP. and JET FIRST, INC.,
CHRIS DOSCHER, STUART
CAUFF, and MICHAEL KEISTER,

                  Defendants.

---

| APPEARANCES | OF COUNSEL |
|---|---|
| GANZ, WOLKENBREIT & FRIEDMAN, LLP<br>Attorney for plaintiff and counter-defendant<br>1 Columbia Circle<br>Albany, NY  12203 | ROBERT E. GANZ, ESQ. |
| HARRIS BEACH PLLC<br>Attorney for defendant and cross-claimant<br>Taughannock Aviation Corp.<br>119 East Seneca Street<br>Ithaca, NY  14851-0580 | EDWARD C. HOOKS, ESQ. |
| BOND, SCHOENECK & KING, PLLC<br>Attorney for defendant Stuart Cauff<br>One Lincoln Center<br>Syracuse, NY  13202 | LILLIAN ABBOTT PFOHL, ESQ. |

NEAL P. McCURN, Senior District Court Judge

MEMORANDUM-DECISION AND ORDER

**I.     Introduction**

Plaintiff RCP's Lear, LLC ("RCP") brings this breach of contract action against defendants Taughannock Aviation Corporation ("TAC"), Jet First, Inc. ("Jet First"), Chris Doscher ("Doscher"), Stuart Cauff ("Cauff"), and Michael Keister ("Keister"), alleging the defendants' breach of various agreements relating to aircraft chartering arrangements.  The court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).

Default judgment has entered against defendants Jet First, Doscher, and Cauff. (Doc. Nos. 28, 29).  Currently before the court is defendant Cauff's motion to dismiss TAC's cross claim against him on the basis of insufficient service of process. (Doc. No. 47).

**II.    Background**

The facts contained in this section are taken from RCP's complaint, unless noted otherwise, and are included herein to provide context to Cauff's motion.  In July of 2005, RCP, a New Jersey limited liability company with its principal place of business in Skillman, New Jersey, became owner of a Challenger 600 aircraft (the "Challenger").  RCP wished to generate revenue and profits as a result of

ownership of the Challenger and sought to make arrangements with an entity which held a Federal Aviation Agency ("FAA") Part 135 Operating Certificate for charter operation in order to utilize the Challenger in that manner. RCP approached defendant Cauff, with whom he had previously made similar arrangements with respect to a different aircraft, to further RCP's goal to enter into a charter arrangement. RCP states that Cauff was associated with defendant Jet First. Cauff negotiated a charter arrangement with Taughannock Aviation Corporation ("TAC"), a New York corporation with its principal place of business in Ithaca, New York. On July 12, 2005, RCP entered into an Aviation Services Agreement ("the Agreement") with TAC (which held a valid FAA charter operating certificate) for the purpose of generating income for RCP, TAC, and Jet First.

Pursuant to the Agreement, TAC would have possession of and would operate the Challenger for a ten year period, bearing all expenses of the charter flight operations, including but not limited to maintenance costs for the Challenger. TAC agreed to pay RCP the sum of $54,275.61 per month as a lease rate. The base of operations for the charter flights would be Ithaca, New York. The parties agreed that in the event of disputes arising in connection with the agreement, "[t]his Agreement shall be governed by and construed in accordance

3

with the laws of the State [of] New York.  Any legal action arising in connection with this Agreement shall be brought in an appropriate court with jurisdiction over matters arising in and for Tompkins County, NY."  (Doc. No. 1, Exh. 1, p. 11).

On July 13, 2005, TAC and Jet First and its "principal owners/shareholders severally and individually" (Cauff, Doscher, and Michael Keister), entered into an Aircraft Charter Operating Agreement (the "Charter Agreement") to guarantee the performance of TAC in regard to the Agreement signed the previous day.  Cauff was a signatory to that document in his individual capacity. (Doc. No. 63-1).  The Charter Agreement provided that Jet First would arrange for charter flights and retain certain revenues.  In addition to monies which were to flow between Jet First and TAC, the Charter Agreement provided that Jet First would make the lease payments of $54,275.61 directly to RCP, and further provided that the cost of maintenance was to be the responsibility of Jet First, including the maintenance service plan charges from Honeywell, described below.

TAC entered into a maintenance service plan agreement with Honeywell International, Inc. ("Honeywell") to provide engine maintenance for the Challenger.  As owner, RCP was required to guarantee the obligations of TAC to Honeywell.  RCP alleges that the guarantee did not obviate TAC's obligation under the Agreement to bear the ultimate expense of providing all maintenance

services relating to the Challenger during the term of the Agreement.

The parties performed their respective obligations under the Agreement from July through December 2005. Beginning in January 2006, RCP alleges that TAC failed to pay the obligations due Honeywell under the maintenance service plan, and beginning in April 2006, ceased making monthly lease payments to RCP pursuant to the Agreement. In order to ensure the continued proper servicing of the Challenger, RCP paid Honeywell the sum of $216,630.87 for TAC's defaulted obligations for January through April and August through November of 2006. The amount of the defaulted lease payments through January of 2007, when the action was filed in this court, is $542,760.10.

In April of 2006 TAC surrendered possession of the Challenger to Jet First, allegedly because TAC had not been paid by Jet First for various expenses TAC had incurred in connection with the operation of the Challenger. TAC received an acknowledgment letter from Jet First, which recognized Jet First's financial responsibility for payment of the accrued maintenance services, totaling $139,996.00.[1] RCP was also obligated to pay $ 13,993.32 to another provider of aircraft maintenance/fuel services who filed a lien against the Challenger for

---

[1] This sum is included in the $216,630.87 set forth, supra, that RCP paid Honeywell for TAC's defaulted obligations.

unpaid services and/or products. This sum was paid by RCP to keep the Challenger title free and to avoid being in default with RCP's own financing lender. On November 24, 2006, the Challenger was recovered by RCP from Jet First and provided to a new operator. RCP filed this action seeking a total reimbursement by defendants of $708,249.56 plus reasonable attorneys' fees.

On May 10, 2007, RCP sought an entry of default from this court as against Jet First and Doscher (Doc. No. 16). RCP filed an affidavit asserting that pursuant to § 311 (a)(1) of the New York Civil Procedure Law and Rules ("CPLR"), Jet First was properly served a copy of the summons and complaint in the present action on February 13, 2007. RCP also informed the court that pursuant to CPLR § 308, Doscher was also properly served a copy of the summons and complaint in the present action on February 13, 2007. The time for Jet First and/or Doscher to appear, or answer the complaint, expired on or about March 5, 2007, pursuant to Rule 12 of the Federal Rules of Civil Procedure. On May 17, 2007, entry of default was granted by the Clerk of the Court against Jet First and Doscher.

On June 6, 2007, RCP sought an entry of default from this court as against Cauff. (Doc. No. 22). RCP filed an affidavit asserting that pursuant to CPLR § 308(2), Cauff was properly served a copy of the summons and complaint in the present action on April 4, 2007. The time for Cauff to appear, or answer the

complaint, expired on or about May 30, 2007, pursuant to Rule 12 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). On June 8, 2007, entry of default was granted by the Clerk of the Court against Stuart Cauff. On July 18, 2007, this court entered default judgment in favor of RCP in the amount of $730,736.37 against Jet First and Doscher (Doc. No. 28) ($708,249.56 plus interest from the date of the alleged breach of the Agreement to the date of entry of default ,together with $390.00 total costs). Also on that date, default judgment in the amount of $730,736.37 entered in favor of RCP against Cauff. (Doc. No. 29).

On October 2, 2007, TAC requested leave to file an amended answer in this action with consent by RCP. The court granted same, and on October 8, 2007, TAC filed its amended answer and cross claim against Jet First, Doscher, Cauff and Keister and its counterclaim against RCP. (Doc. No. 33). On November 16, 2007, RCP filed its motion for summary judgment against TAC. (Doc. No. 38). RCP and TAC reached tentative agreement on January 25, 2008, and the court awaits a stipulation of dismissal between those parties. Now before the court is Cauff's December 23, 2007 motion to dismiss TAC's cross claim for insufficiency of service of process, pursuant to Rule 12(b)(5) of the Federal Rules. (Doc. No. 47).

## III. Discussion

### A. Insufficient Service of Process

In his motion to dismiss for insufficient service of process, Cauff argues that service upon his non-live-in housekeeper at Cauff's home was insufficient to effect personal service on him pursuant to Fed. R. Civ. P. Rule 4(e), and that he is entitled to dismissal pursuant to Fed. R. Civ. P. Rule 12(b)(5) (insufficient service of process as a defense to a claim for relief in any pleading) (West 2008).

Rule 4(e) of the Federal Rules provides that

> [u]nless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. Rule 4(e) (West 2008).

The New York state procedure for serving process allowed under Rule 4(e)(1) is set forth at CPLR § 308, which states in pertinent part that

> **Personal service upon a natural person shall be made by any of the following methods:**

1. by delivering the summons within the state to the person to be served; or

2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business ..., such delivery and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing; proof of service shall identify such person of suitable age and discretion and state the date, time and place of service, ... or

3. by delivering the summons within the state to the agent for service of the person to be served as designated under rule 318 ...,;

4. where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business ..., such affixing and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such affixing or mailing, whichever is effected later; service shall be complete ten days after such filing ... ;

5. in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section.

6. For purposes of this section, "actual place of business" shall include any location that the defendant, through regular solicitation or

advertisement, has held out as its place of business.

McKinney's N.Y. C.P.L.R. § 308 (West 2008)

CPLR § 313 sets forth the procedure for service outside New York State:

**Service without the state giving personal jurisdiction**

A person domiciled in the state or subject to the jurisdiction of the courts of the state under section 301 or 302,[2] or his executor or administrator, may be served with the summons without the state, in the same manner as service is made within the state, by any person authorized to make service within the state who is a resident of the state or by any person authorized to make service by the laws of the state, territory, possession or country in which service is made or by any duly qualified attorney, solicitor, barrister, or equivalent in such jurisdiction.

McKinney's C.P.L.R. § 308 (West 2008).

The court points out for clarification purposes that pursuant to the state rules of civil procedure, the person of suitable age and discretion served at the dwelling place or usual place of abode is not required to reside there.

**B.    Applying the law to the facts of this case**

As a threshold matter, the court must address the rules pursuant to which process was served on Cauff. Cauff asserts that "[c]onveniently, as a solution to its failure to meet the "resided therein" requirement of Fed. R. Civ. P. 4(e)(2),

---

[2] These sections reference jurisdiction of the court.  It is uncontested that this court has jurisdiction over the matter before it.

10

Taughannock Aviation Corp. ("TAC") now urges that it never intended to effect personal service under Rule 4(e)(2)(B). Rather, it intended all along to effect service under New York's substituted service statute. N.Y. C.P.L.R. § 308(2)." (Doc. No 70 at 1). The court disagrees. Service pursuant to CPLR § 308(2) was understood by the court as RCP's intent from the initial filing of this action. In this court's July 17, 2007 decision, and reiterated above, we stated that "[o]n June 6, 2007, RCP sought an entry of default from this court as against Cauff (Doc. No. 22). RCP filed an affidavit asserting that pursuant to CPLR § 308(2), Cauff was properly served a copy of the summons and complaint in the present action on April 4, 2007. The time for Cauff to appear, or answer the complaint, expired on or about May 30, 2007, pursuant to Rule 12 of the Federal Rules of Civil Procedure." (Doc. No. 27; 2007 WL 2085386 at *3 (2007 N.D.N.Y.)).

In his motion, Cauff's sole premise for requesting dismissal of TAC's cross claim was that his housekeeper did not reside with him, and therefore, service was insufficient under Rule 4(e). TAC replied, asserting that service was sufficient pursuant to CPLR §§ 308 and 313. The court concurs. As stated above, the state rules do not require that Cauff's housekeeper reside with him, but that she be a person of suitable age and discretion. Cauff asserts that she was not fluent in English, but he does not assert that he never received the summons for which his

11

housekeep accepted service.  Neither Cauff nor his housekeeper deny receiving the summons delivered by the process server. (Doc. Nos. 70-2, 70-3).  Cauff does, however, assert that he has "no recollection of receiving the service papers in this case via U.S. mail." (Doc. No. 70-2).

 Raising the issue for the first time in his reply filed with this court on January 25, 2008, Cauff now focuses on the procedural issue that RCP neglected one of the required steps to perfect service pursuant to CPLR § 308(2), that step being the filing of the affidavit of service.  Cauff maintains that TAC's proof of service was in fact filed nine days late. (Doc. No. 70).  Cauff asserts that courts require strict compliance with the provisions of CPLR § 308(2), citing an unreported case, Pearson v. Bd. of Educ. of City of New York, 2004 WL 2297354 (S.D.N.Y. 2004).  Upon review, the court notes that the Pearson court found that the plaintiffs failed to meet their burden of sufficient service of process because they did not properly serve the defendants with 120 days of filing their complaint. Id. at *5.  Cauff also cites another unreported S.D.N.Y. case from 1995, Johnson v. Quik Park Columbia Garage Corp., 1995 WL 258153, to bolster his premise that TAC's cross claim should be dismissed for failure to timely file proof of service within 20 days of the time of service of summons.  Upon review of this case, the court distinguishes Johnson because the process server left a copy of the

summons and complaint at the defendant's place of business with a receptionist who was not authorized to accept process. To be sure, service on the defendant in that case was ineffective under the "leave and mail" method because the plaintiff did not file proof of service with the clerk of the court within 20 days of when the process server mailed a copy of the summons and complaint to the defendant's place of business. Id. at *2. However, in the case at bar, the service on Cauff's housekeeper was not defective pursuant to CPLR §§ 308 and 313.

Cauff also asserts that TAC's amended answer and cross claim was Cauff's first notice of the above-captioned lawsuit. (Doc. No. 47). Without commenting on the plausibility of this assertion, the court determines that the purpose of service of process, to provide a defendant actual notice of the claims against him, has been adequately fulfilled in this case. Cauff is not arguing that he was not timely served with TAC's cross claim, in fact, he recognizes notice, supra. Instead he argues for dismissal in that the procedural filing of proof of service was not timely.

In its surreply filed January 29, 2008 (Doc. No. 71), TAC argues that the overwhelming authority on this issue does not support Cauff's position. TAC cites Beller & Keller v. Tyler, 120 F.3d 21, 26 (2d Cir. 1997) as authority for the premise that ""[t]he additional proof of service requirement of CPLR § 308(4)

13

(along with its twenty-day time limit and its ten-day post-filing period) serves only one purpose: triggering the thirty-day time limit in which to file an answer in state court." Id.  For reasons known only to Cauff, when he received the notice of TAC's cross claim which was placed in the hands of his housekeeper, he chose not to file an answer.  Instead, it appears that Cauff ignored the summons, and delayed until December 23, 2007 before filing his present motion to dismiss with the court.  Accordingly, the court finds that sufficient process was made, and will not dismiss TAC's cross claim because TAC delayed nine days in filing its proof of service.

### IV.  Conclusion

For the reasons set forth above, the Court hereby DENIES defendant Cauff's motion to dismiss TAC's cross claim for insufficient service of process. (Doc. No. 47).

SO ORDERED.

January 30, 2008

_____
Neal P. McCurn
Senior U.S. District Judge

14